IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID POWELL,                           )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )   CASE NO. 3:23-cv-26-RAH-JTA
                                        )   (WO)
RAILROAD RETIREMENT BOARD,              )
                                        )
          Defendant.                    )

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Before the court is Defendant Railroad Retirement Board's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 9). Also before the court is *pro se* Plaintiff David Powell's Motion for Judgment. (Doc. No. 18.) Also before the court is Plaintiff's Answer to Defendant's Motion to Dismiss, which the court construes as a Motion for Leave to Amend the Complaint to add claims of breach of contract and fraudulent misrepresentation. (Doc. No. 24.) For the reasons stated below, the undersigned recommends that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 9) be GRANTED, that Plaintiff's Motion for Judgment (Doc. No. 18) be DENIED, that Plaintiff's Motion for Leave to Amend (Doc. No. 18) be DENIED, and that this action be dismissed without prejudice for lack of subject matter jurisdiction.

## I. JURISDICTION

Defendant removed this action to this court pursuant to 28 U.S.C. § 1442(a)(l), which provides that

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The existence of subject matter jurisdiction and the propriety of venue are in dispute.

## II.  STANDARD OF REVIEW

Subject matter jurisdiction is the power of the court to hear a class of cases, which is conferred by statute. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503, 513 (2006). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (citation omitted). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514.

The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. *See Bell v. Hood*, 327 U.S. 678, 681–685 … (1946). She invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *See* § 1332(a).

*Id.* at 513 (footnote omitted).

2

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) bring either "facial attacks"[1] or "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id*. at 1529. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Id*. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id*.

*Morrison v. Amway Corp*., 323 F.3d 920, 925 n.5 (11th Cir. 2003).

Liberal construction is afforded to *pro se* pleadings because they are not drafted by lawyers. *See Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998))). However, the leniency afforded the construction of *pro se* pleadings is not license for the court "'to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading . . . to sustain a cause of action.'" *Nails v. AmeriCredit*, No. CIV.A. 2:10CV826, 2011 WL 310254, at *1 (M.D. Ala. Jan. 6, 2011), *report and recommendation adopted*, No. 2:10CV826-MHT, 2011 WL 304790 (M.D. Ala. Jan. 28, 2011) (quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132

---

[1] This case involves a facial attack on subject matter jurisdiction.

F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "While the pleadings of *pro se* litigants are liberally construed, they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie Cty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (internal citations and quotation marks omitted).

## III.  FACTS[2] AND PROCEDURAL HISTORY

Plaintiff David Powell, a former railroad employee, was divorced in 1990, and his ex-wife remarried in 1992.[3] (Doc. No. 1-1 at 5; Doc. No. 13-4.) On July 31, 2002, the Circuit Court of Cook County, Illinois, entered an order apportioning some of Powell's Railroad Retirement Act[4] benefits to his ex-wife. *Powell v. R.R. Ret. Bd.*, Case No. 21-cv-1345 (N.D. Ala.) (Doc. No. 1 at 15-16).  That Order stated:

> 1. The purpose of this Order is to divide the Employee DAVID POWELL'S non-tier l benefits under the Railroad Retirement Act as part of a final distribution of property between the parties. The parties

---

[2] Defendant's Motion to Dismiss constitutes a facial attack on subject matter jurisdiction. The jurisdictional analysis in Section IV of this Recommendation is limited to the face of the Complaint. In this Section, facts and procedural history drawn from sources outside the Complaint are provided for background information only and have been obtained from uncontradicted materials the parties submitted in this case, and, for procedural history only, from related court cases. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (holding that, generally, a court may take judicial notice of another court's records not for the truth of the matters asserted in them, but for the fact of the existence of other litigation and related filings, and that the court may take judicial notice of another court's orders "only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation").

[3] Plaintiff states several times in court filings that his ex-wife remarried in 1990; however, the marriage certificate he submitted to demonstrate that his ex-wife remarried reflects that the ex-wife's remarriage occurred on March 14, 1992, in Massachusetts. (Doc. No. 1 at 1, 5.)

[4] "The [Railroad Retirement Act] provides benefits to railroad employees who complete enough years of service and either reach a certain age or become disabled. 45 U.S.C. § 231(a)(1)." *Powell v. R.R. Ret. Bd.*, No. 2:21-CV-1345-GMB, 2022 WL 2496198, at *2 (N.D. Ala. July 6, 2022).

in this action were divorced by order of this Court entered May 16, 1990.

2. The Court finds in accord with the law of this state that DAVID POWELL's non-tier 1 benefits under the Railroad Retirement Act are marital/community property between the parties and may be allocated by order of this Court. The Railroad Retirement Act prohibits any allocation of DAVID POWELL's tier 1 benefits. The Railroad Retirement Board administers the Railroad Retirement Act.

3. …

4. It is therefore ordered that MAUREEN M. POWELL the former spouse of DAVID POWELL shall receive 38.24 percent of the marital portion of Employee's non-tier 1 benefits. The above benefits payable to MAUREEN M. POWELL shall not apply to any disability benefits received, or to be received, by DAVID POWELL.

(*Id.*)

On August 15, 2002, after receiving a copy of the Cook County Circuit Court's

Order, Defendant sent Plaintiff's then-attorney the following letter:

This is in reference to the order entered in the above-entitled case that was received by the Office of General Counsel of the Railroad Retirement Board.

The document furnished to the Bureau of Law substantially complies with the regulations of the Board (20 CFR Part 295). Accordingly, beginning with the annuity payable on September l, 2002 (which represents payment for August), the Board will terminate the payments that were being made to Ms. Moriarty. Mr. Powell's annuity will be recertified to its full rate. No further deductions will be made from the disability annuity being paid to Mr. Powell due to the partition of his annuity. Upon Mr. Powell's annuity being converted to an age and service retirement annuity upon his attainment of age 66, we will resume making deductions and pay to the former spouse a portion of the employee's benefits according to the following formula:

38.24% of divisible benefits per month.

In order to make those payments Ms. Moriarty must keep us informed of any future change of address.

(Doc. No. 13-1.)

On February 16, 2021, Defendant notified Plaintiff that his payments "ha[d] been adjusted" and that, though "[t]he adjustment increases the amount of [Plaintiff's] monthly annuity," Defendant "reapplied the court ordered reduction effective November 1, 2020." *Powell v. R.R. Ret. Bd.*, No. 2:21-CV-1345-GMB, 2022 WL 2496198, at *1 (N.D. Ala. July 6, 2022); *Powell v. R.R. Ret. Bd.*, Case No. 21-cv-1345 (N.D. Ala.) (Doc. No. 1 at 9-2).

After this, several letters were exchanged between Plaintiff and Defendant regarding Plaintiff's contention that his ex-wife was entitled to no benefits after her 1992 remarriage, and Plaintiff requested that the portion of the Railroad Retirement Act benefits distributed to his ex-wife beginning in 2021 should be refunded to him. (Docs. No. 13-1 through -8.) Among these letters was one dated June 21, 2021, from Plaintiff to Defendant stating the following:

> I am writing once again concerning my ex wife being paid from my benefits. I have enclosed a Court order that removed her from any benefits, why she was paid in the first place was an error of the board. However she remarried in 1990, and should not collect anything.
>
> Now the board has been paying her once again[.] In the hand book when annuities stop it is clearly stated, upon re marriage her benefits stop, with no mention of any orders of any Court. Therefor please correct this and [se]nd my back pay from March to present and restore my benefits.

(Doc. No. 13-4 (sic).)

On August 5, 2021, Defendant's Office of General Counsel sent the following letter:

> This is in response to your letter dated June 21, 2021 to the Railroad Retirement Board (RRB) Bureau of Law (now called the Office of General

Counsel). In your letter, you state that your former spouse is receiving a portion of your benefits but has remarried and "should not collect anything." You stated that the hand book states that upon re-marriage annuities stop payment. Also with your letter you enclosed a court order from the Circuit Court of Cook County, entered October 18, 2002, which stated "Effective immediately Respondent's [David Powell's] obligation to pay child support for the minor child Victoria, is terminated."

I have reviewed your file and *the partition being paid to your former spouse appears to be correct, and will continue to be paid to your former spouse unless a new court order is entered that clearly terminates the partition*. At the outset, please be aware that court-ordered partitions are property awards as part of a divorce, which award a portion of your divisible benefits to your former spouse as her property. Such partitions are separate and distinct from spousal support, child support, or former spouse annuities. Former spouse annuities are separate entitlements to benefits that former spouses must apply for with the RRB and they have statutory eligibility requirements. Former spouse annuities terminate if the former spouse remarries, but court-ordered partitions do not. This is consistent with a letter dated March 10, 2021 that was sent to you from the Birmingham Field Office of the RRB (enclosed).

A court order dated July 31, 2002 was received and reviewed by the Office of General Counsel and your attorney was advised in a letter dated August 15, 2002 that the order awarded benefits to your former spouse. The order and August 2002 letter are enclosed. The court order states that it does not apply to disability annuities, but please be aware that disability annuities are converted to retirement annuities once the annuitant reaches full retirement age as defined in the Social Security Act. For more information about the partition of divisible benefits, please see the enclosed Attorney's Guide to the Partition of Railroad Retirement Annuities (please note the discussion of converting disability annuities to retirement annuities on page 10). The court order that you provided with your letter terminated child support payments, but it did not terminate the partition of your divisible benefits that was awarded to your former spouse. As stated above, *the partition will remain in effect until the RRB receives a court order that clearly supersedes the July 31, 2002 order and states that the partition is terminated*.

Please feel free to contact me if you have any further questions.

(Doc. No. 13-8 (emphasis added).)

On October 8, 2021, Plaintiff sued Defendant in the United States District Court for the Northern District of Alabama. *Powell*, 2022 WL 2496198, at *1. He asserted claims of negligent misrepresentation, age discrimination, and "contempt of court." *Powell v. R.R. Ret. Bd.*, Case No. 21-cv-1345 (N.D. Ala.) (Doc. No. 1 at 5-6). On July 6, 2022, United States Magistrate Judge Gray M. Borden of the United States District Court for the Northern District of Alabama granted Defendant's motion to dismiss on grounds that the court lacked jurisdiction because,

> [e]ven if … Powell ha[d] exhausted his administrative remedies and his appeal challenges a final decision of the Board, he must file his judicial appeal in one of three courts: the "court of appeals for the circuit in which the claimant or other party resides or will have had his principal place of business or principal executive office," the Seventh Circuit, or the District of Columbia Circuit. 45 U.S.C. § 355(f).

*Powell*, 2022 WL 2496198, at *3.

In 2022,[5] Plaintiff filed this action in Randolph County, Alabama.[6] His complaint reads, in its entirety:

### PLAINTIFF'S MOTION FOR NEW COURT ORDER

I Mr David Powell motions this Court pursuant to the Civil rules of procedure for an new order to instruct the Defendant to stop paying my ex spouse any portion of my pension, with back pay from March 2021. As stated in exhibit

---

[5] The copy of the Complaint that is attached to the Notice of Removal is not dated or stamped. The court infers the year from the state court case number Defendant provides in the Notice of Removal.

[6] The Notice of Removal states that the action was filed in the Circuit Court of Randolph County, Alabama. (Doc. No. 1.) The Complaint's caption indicates that it was filed in the District Court of Randolph County. (Doc. No. 1-1 at 1.) The exhibits to the Notice of Removal offer no help in verifying in which of the two courts the action was filed, or from which of the two courts it was removed.

4[7] which states from the Defendant a new order is required to stop said payments. In addition exhibit 2 clearly shows from the Defendant's guide book annuities stop upon remarriage. Exhibit 3 shows a Marriage license to confirm this fact.

PRAYERS FOR RELIEF

I Mr David Powell Prays this Court for relief in the above stated request to instruct the Defendant to cease all payments to my ex spouse and include all back pay from March 2021.

(Doc. No. 1-1 (sic).)

On January 10, 2023, Defendant removed the action to this court pursuant to 28 U.S.C. Section 1442(a)(l).

On March 13, 2023, Defendant filed a Motion to Dismiss for Lack of Jurisdiction. (Doc. No. 9.)

On March 14, 2023, the court entered a briefing order on the Motion to Dismiss, which "[ordered] that on or before March 30, 2023, the plaintiff shall show cause in writing as to why … [D]efendant's motion should not be granted." (Doc. No. 11 (emphasis omitted).) The Order further stated: "[D]efendant shall file a reply on or before April 6, 2023." (*Id.*)

---

[7] Exhibit 4 to the Complaint includes a copy of the August 5, 2021 letter from Defendant, in which Defendant stated that "the partition being paid to your former spouse … will continue to be paid to your former spouse unless a new court order is entered that clearly terminates the partition" and that "the partition will remain in effect until [Defendant] receives a court order that clearly supersedes the July 31, 2002 order and states the partition is terminated." (Doc. No. 1-1; Doc. No. 13-8.) The copy of the August 5, 2021 letter that is attached to the Complaint is missing a page, but Plaintiff supplied the full letter in his response to the Motion to Dismiss. (Doc. No. 1-1; Doc. No. 13-8.)

On March 24, 2023, Plaintiff filed a response to the motion to dismiss, in which he indicated that this action is his attempt "to comply with [Defendant's] request for a new [c]ourt order" terminating the partition to his ex-wife. (Doc. No. 13 at 2.)

April 6, 2023 passed without a reply brief from Defendant. Therefore, on April 13, 2023, the court entered an order requiring Defendant to show cause why it had not filed a reply brief in accordance with the March 14, 2023 Order. (Doc. No. 14.)

On April 17, 2023, Defendant timely responded to the show cause order, apologizing for and explaining the oversight and requesting an extension of time to file a reply brief. (Doc. No. 16.)

On April 19, 2023, Plaintiff filed a Motion to Time Bar Defendant and Motion for Judgment, arguing that the court should bar Defendant from filing a reply brief because the reply brief was not timely filed, and further moving for judgment on the merits in Plaintiff's favor based on Defendant's failure to timely comply with the court's March 14, 2023 briefing order. (Docs. No. 11, 18.)

On April 24, 2023, the court entered an Order construing Defendant's response to the Order to show cause as a motion for extension of time, granting the motion, and directing Defendant to file a reply brief not later than May 2, 2023. (Doc. No. 19.) The court denied Plaintiff's Motion to Time Bar Defendant as insofar as it sought an order prohibiting Defendant from filing a reply brief. (Doc. No. 19.) The court did not enter a recommendation on Plaintiff's Motion for Judgment. (Doc. No. 18.)

On May 2, 2023, as ordered, Defendant filed its reply brief in support of its Motion to Dismiss. (Doc. No. 21.)

On May 10, 2023, the court, having observed that the state court record appended to the Notice of Removal appeared to be incomplete because it appeared pages were missing from a document, ordered Defendant to supplement the record with the missing material or, alternatively, to file written notice that the document in the state court record was likewise missing pages. (Doc. No. 22.)

On May 11, 2023, Defendant timely complied with the May 10, 2023 Order, notifying the court in writing that the Notice of Removal contained the complete state court record.

On May 12, 2023, Plaintiff filed a Document titled "Plaintiff's Answer to Defendant[']s Motion to Dismiss" (Doc. No. 24), which appears to be an attempted amendment to his Complaint asserting new claims for breach of contract and fraudulent misrepresentation. Because Plaintiff's Answer to Defendant[']s Motion to Dismiss (Doc. No. 24) is clearly an attempt to file an Amended Complaint, and because, at this point in the litigation, amendments must be made by motion or the opposing party's written consent, the court will construe "Plaintiff's Answer to Defendant[']s Motion to Dismiss" (Doc. No. 24) as a Motion to Amend. Fed. R. Civ. P. 15(a) (regarding procedure for amendment); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see Hopkins*, 399 F. App'x at 565 ("While the pleadings of *pro se* litigants are liberally construed, they must still comply with procedural rules governing the proper form of pleadings.").

Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 9), Plaintiff's

Motion for Judgment (Doc. No. 18), and Plaintiff's Motion to Amend (Doc. No. 24) are

now under submission and ready for disposition.

## IV.  DISCUSSION

A.    Jurisdiction

1.    Plaintiff's Claims

It is apparent that Plaintiff is either (1) attempting to obtain a new court order to

supersede the previous domestic relations order of the Circuit Court of Cook County,

Illinois, regarding the distribution of his Railroad Retirement Act benefits to his ex-wife,[8]

---

[8] By letter dated August 5, 2021, a copy of which was attached to Plaintiff's Complaint, Defendant informed Plaintiff that "the partition being paid to your former spouse appears to be correct, and will continue to be paid to your former spouse unless a new court order is entered that clearly terminates the partition" and that "the partition will remain in effect until [Defendant] receives a court order that clearly supersedes the July 31, 2002 order and states that the partition is terminated." (Docs. No. 1-1, 13-8.) Plaintiff's Complaint is titled "Plaintiff's Motion for New Court Order." (Doc. No. 1-1.) In the Complaint, Plaintiff seeks "a[] new order to instruct the Defendant to stop paying [his] ex spouse any portion of [his] pension, with back pay from March 2021." (*Id*.) Also in the Complaint, Plaintiff references the August 5, 2021 letter's instructions that "a new order is required to stop payments." (*Id*.) To the Complaint, Plaintiff attached a page from the August 5, 2021 letter and, by hand, drew an arrow pointing to the sentence in the letter stating that "the partition will remain in effect until [Defendant] receives a court order that clearly supersedes the July 31, 2002 order and states that the partition is terminated." (Doc. No. 1-1 at 7.) In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff reiterates that this action is his attempt to obtain a new court order terminating the partition of his Railroad Retirement Act benefits so that Defendant will end any distribution to his ex-wife and so that Plaintiff may seek recovery of previous distributions to her. (Doc. No. 13 at 2.) To Plaintiff's response to the Motion to Dismiss, he attached a complete copy of the August 5, 2021 letter from Defendant, this time underlining by hand and placing a handwritten exclamation point beside the sentence in the letter stating that "the partition will remain in effect until [Defendant] receives a court order that clearly supersedes the July 31, 2002 order and states that the partition is terminated." (Doc. No. 13-8 at 2.)  Thus, Plaintiff has made clear on the face of the Complaint (as well as in other filings) that this action is his attempt to obtain a new court order superseding the 2002 Order of the Circuit Court of Cook County, Illinois, partitioning his Railroad Retirement Act benefits as marital/community property.

or (2) he is seeking this court's review of a decision by Defendant to comply with the domestic relations order of the Cook County Circuit Court. As explained below, this court lacks jurisdiction to do either.

2.    *Rooker-Feldman*

The court lacks subject matter jurisdiction over Plaintiff's request for a "new court order" allocating Plaintiff's Railroad Retirement Act benefits to him alone and not to his ex-wife. "The federal courts are not a forum for appealing state court decisions." *Staley v. Ledbetter*, 837 F.2d 1016, 1018 (11th Cir. 1988); *see also Pompey v. Broward Cnty.*, 95 F.3d 1543, 1550 (11th Cir. 1996) ("Neither federal district courts nor federal courts of appeals may usurp the authority and function of the Supreme Court and state appellate courts to review state court proceedings.").

In his response to the Motion to Dismiss, Plaintiff states that, before the divorce became final in 1990, he read in the Railroad Retirement Act benefits handbook that a divorced spouse's annuity ceases upon remarriage, so when he agreed to the 1990 dissolution of marriage knowing his wife intended to remarry, he did so believing that she would "not be entitled to anything" when she did. (Doc. No. 13-1 at 2.) In 2002, the Cook County Circuit Court entered its order partitioning a portion of Plaintiff's Railroad Retirement benefits to his ex-wife as marital/community property, twelve years after the divorce and ten years after the ex-wife's remarriage. The relevant circumstances have not changed since that order was entered. The only apparent difference now is that, because Plaintiff reached the age in which disability benefits are converted to retirement annuities, the amount due Plaintiff's ex-wife pursuant to the Cook County court order has changed,

and Defendant has adjusted payments accordingly. (*See* Doc. No. 1-1; Doc. No. 13-3 at 1; Doc. No. 13-3; Doc. No. 13-4.) Plaintiff is now explicitly attempting to get this court to review the Cook County Circuit Court's 2002 marital property distribution order, reject that distribution as unlawful, and enter a new order distributing the marital property solely to Plaintiff and binding Defendant to that new distribution.

Therefore, Plaintiff is attempting to use this action to review and reject the Illinois divorce court's prior decision regarding distribution of marital property. *See Redford v. Gwinnett Cnty. Jud. Cir.*, 350 F. App'x 341, 345 (11th Cir. 2009) (holding that the *Rooker-Feldman*[9] doctrine barred the plaintiff's "explicit attempt to use the federal courts to overturn the Georgia state courts' decisions regarding his divorce, child custody arrangement, and child support obligations, and to attack the legality of his incarceration for refusing to pay child support" where the plaintiff was a party to the divorce action in which he received an unfavorable ruling and where the plaintiff could have raised in the divorce action the legal arguments that he was raising in federal court to, "in essence" get the federal court to "overturn those state court decisions").

Keeping in mind that nowadays *Rooker-Feldman* "will almost never apply," *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021), the undersigned is reticent to mention *Rooker-Feldman* as barring subject matter jurisdiction in this action. However, "almost never" is not "never." If the doctrine ever *does* apply, this action embodies the exact circumstance for it. If *Rooker-Feldman* means anything, "*Rooker-Feldman* means that

---

[9] The *Rooker-Feldman* doctrine derives its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983).

federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Id*. Thus, *Rooker-Feldman* bars actions like this one, where a party complaining of injury from a prior unfavorable state-court judgment brings a subsequent action inviting the federal district court to review and reject that previous judgment. *Id.* at 1212 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Plaintiff here is complaining that, because Defendant is complying with the Cook County's 2002 order distributing his Railroad Retirement Act benefits as marital/community property under Illinois law, he is now losing a portion of his Railroad Retirement Act benefits to his ex-wife. The injury of which Plaintiff complains is "caused by the [Cook County] judgment itself. Period." *Id.* He seeks an order from this court rejecting and replacing the Cook County order and apportioning all of his Railroad Retirement Act benefits to him alone.  The relief sought is precisely the relief prohibited by *Rooker-Feldman*: a new order reviewing and rejecting the final state court order and replacing that order with one more favorable to Plaintiff.

There is simply no getting around *Rooker-Feldman* here. Therefore, the undersigned concludes that the *Rooker-Feldman* doctrine bars jurisdiction over Plaintiff's request for a new court order. *See Brown v. Coffin*, 766 F. App'x 929, 931–32 (11th Cir. 2019) (holding that the *pro se* plaintiff abandoned his argument that the district court erred in applying *Rooker-Feldman* because he raised it for the first time in his appellate reply brief, but that, even if the appellate court were to review that issue, it would find the district court did not err because, "[w]hile [the plaintiff] claims he is seeking relief from the Florida Department of Revenue's administrative actions in enforcing a child support order, the harm he actually

seeks to remedy is the Florida state court's judgment in favor of the Department"); *Lawton v. Rosen*, 559 F. App'x 973, 974 (11th Cir. 2014) (holding that a federal court lacked jurisdiction to decide an action attacking a state court order requiring the plaintiff "to pay $44,082.66 in child-support arrears to his ex-wife" (citing *Exxon*, 544 U.S. 280)); *Redford v. Gwinnett Cnty. Jud. Cir.*, 350 F. App'x 341, 345 (11th Cir. 2009) (holding that *Rooker-Feldman* barred the plaintiff's "explicit attempt to use the federal courts to overturn the Georgia state courts' decisions regarding his divorce, child custody arrangement, and child support obligations" where "[t]he state courts ruled in a way that [the plaintiff] found unfavorable and he now asks the federal court for relief that would, in essence, overturn those state court decisions"); *Liedel v. Juv. Ct. of Madison Cnty., Ala.*, 891 F.2d 1542, 1545-46 (11th Cir. 1990) (holding that *Rooker-Feldman* precluded jurisdiction over claims for relief that would effectively nullify previous final court orders in a child custody proceeding); *Staley*, 837 F.2d at, 1017–18 (holding that the court had no jurisdiction to entertain the plaintiff's § 1983 collateral challenge to "the state agency and court proceedings that terminated her parental rights" because "[t]he federal courts are not a forum for appealing state court decisions"); *Brown v. Minnesota*, No. 3:22-CV-152-TCB, 2022 WL 18046831, at *2 (N.D. Ga. Oct. 31, 2022) (holding that *Rooker-Feldman* barred an action that was "in substance an appeal from a child custody modification proceeding in a Minnesota state district court" because, if the court were to find that the plaintiff's V.A. benefits were exempt from child support obligations, the court would essentially nullify the state judgment and "would function as an appeal of the Minnesota state district court's order and effectively cut against the Supreme Court's exclusive authority"), *appeal*

*dismissed*, No. 22-14212-C, 2023 WL 2399285 (11th Cir. Jan. 31, 2023); *Duggans v. Ga. Div. of Child Support Servs.*, No. 321CV00107CDLMSH, 2022 WL 2341152, at *3 (M.D. Ga. Feb. 7, 2022), *report and recommendation adopted*, No. 3:21-CV-107 (CDL), 2022 WL 2341148 (M.D. Ga. Apr. 11, 2022) ("Plaintiff's claims are plainly barred by the *Rooker-Feldman* doctrine. His primary objective in challenging the validity and constitutionality of the [state superior court] child support enforcement order is for this Court to discharge it. Thus, any decision by this Court would invalidate the superior court's order. As a result, the Court is without jurisdiction to entertain Plaintiff's claims."); *Reid v. Michigan*, No. 1:20-CV-2460-JPB, 2021 WL 9721144 (N.D. Ga. Jan. 27, 2021) (holding that *Rooker-Feldman* barred a "collateral[] challenge [to] the state agency and court proceedings that determined paternity and child support"); *Burns v. Branham*, No. CV408-205, 2009 WL 113454, at *2 (S.D. Ga. Jan. 16, 2009) ("[T]o the extent plaintiff seeks to have this Court direct defendants to modify the child support order, plaintiff's claim is barred by well-established principles prohibiting federal courts from compelling action by state courts or state authorities.").

3. Diversity Jurisdiction and the Domestic Relations Exception

Alternatively, to the extent that *Rooker-Feldman* does not apply because it "almost never applies" anymore, *Behr*, 8 F.4th at 1212, the court will consider whether subject matter jurisdiction exists over claims brought under either the court's diversity jurisdiction or federal question jurisdiction. *See Arbaugh*, 546 U.S. at 514 (explaining that the two basic sources of subject matter jurisdiction in a federal court are diversity jurisdiction and federal

question jurisdiction). The court turns first to diversity jurisdiction and the domestic relations exception.

To the extent that Plaintiff seeks an order modifying or replacing the decree of the Circuit Court of Cook County, particularly to the extent that Plaintiff's claim might somehow fall under the court's diversity jurisdiction,[10] the undersigned recommends that the court abstain from exercising jurisdiction under the domestic relations exception. As a matter of statutory construction, federal courts lack jurisdiction to issue or modify divorce, alimony, and child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The Eleventh Circuit has indicated "that the domestic relations exception only applies to diversity jurisdiction." *Ingram v. Hayes*, 866 F.2d 368, 370 (11th Cir. 1988). The Eleventh Circuit has also held that other exclusions to the domestic relations exception may apply, such as where a party to the federal court action was not a party to the state court domestic relations action. *Alliant Tax Credit 31, Inc., v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019).

However, the domestic relations exception flatly prohibits a federal court from "issu[ing] divorce, alimony, and child custody decrees," *Alliant*, 924 F.3d at 1146 (citing *Stone v. Wall*, 135 F.3d 1438, 1440 (11th Cir. 1998) (citing in turn *Ankenbrandt*, 504 U.S. at 703)), *certified question answered*, 734 So. 2d 1038 (Fla. 1999), which is *precisely* what Plaintiff wants the court to do here. Admittedly, Plaintiff named as Defendant the

---

[10] From the materials Plaintiff has filed, Plaintiff's ex-wife, a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure, appears to be a citizen of another state, and there is no indication that she is an Alabama citizen. Plaintiff also has not named any Cook County, Illinois judicial official. The amount in controversy is not indicated in any of Plaintiff's filings.

independent federal agency charged with disposition of the marital property in compliance with the Cook County domestic relations order rather than his ex-wife, which is why this action was removed to this court. Though not technically a party to the previous domestic relations case, Defendant is *only* involved in this action because it is nevertheless *bound* by the domestic relations order issued by the Circuit Court of Cook County, Illinois. Plaintiff, who *was* a party to the Cook County divorce action, wishes this court to modify (or issue a new domestic relations order reallocating marital property contrary to) the Cook County Circuit Court's 2002 order so that Defendant will no longer be required to send a portion of Plaintiff's Railroad Retirement Act benefits to his ex-wife as part of her apportionment of marital/community property under Illinois state domestic relations law. This, the court should not do.

Though this case is not a diversity case because Plaintiff sued a federal agency rather than his ex-wife (who may or may not be an Alabama citizen), as explained more fully in Section IV.A.4 of this Recommendation, this case is also not properly before the court on a federal question that is justiciable here. Thus, unlike in cases holding that federal district courts may exercise federal question jurisdiction to enter declaratory judgments that touch on matters of state domestic relations law, there is no nondiversity jurisdictional basis here upon which this court could declare Defendant's decision to comply with the Cook County domestic relations order to be unconstitutional or in violation of federal law. *Cf. Ingram*, 866 F.2d at 372 (holding that, where the plaintiff sued the Alabama court and judges pursuant to 42 U.S.C. § 1983 challenging an Alabama court's child support order as unconstitutional, the domestic relations exception did not apply, and the district court

19

properly exercised *federal question* subject matter jurisdiction over the declaratory judgment claim because that claim "merely require[d] the district court to consider the constitutionality of the Alabama court's procedures, [and] resolution of th[e] issue d[id] not require the court to delve into the parties' domestic affairs").

In any event, the factors to be considered in deciding whether to exercise jurisdiction in a domestic relations case certainly favor abstention because the judgment Plaintiff seeks is an order directly contradicting a state court's previous, still-standing alimony or divorce decree and ordering Defendant to instead abide by this court's competing order reallocating the divorced couple's marital property. *See Ingram*, 866 F.2d at 370 (11th Cir. 1988) ("Federal courts should not abstain when the following policies favoring federal abstention are absent: 'the strong state interest in domestic relations matters, the competency of state courts in settling family disputes, the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.'" (quoting *Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978)).[11]

The policy considerations behind the domestic relations exception strongly support abstention here, not the least of which is that, "[a]s a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 704. The Circuit Court of Illinois is better equipped than this

---

[11] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent decisions of the Fifth Circuit Court of Appeals prior to October 1, 1981).

court to efficiently determine whether Plaintiff's Railroad Retirement Act benefits are, in fact, divisible marital/community property under Illinois state domestic relations law. The Circuit Court of Cook County Illinois is also far more familiar with the status and rationale for the distribution of the marital/community property between Plaintiff and his ex-wife (who, incidentally, is not named as a party in this action), both as a whole and regarding the Railroad Retirement Act benefits in particular. As a domestic relations court in Illinois, the Cook County Circuit Court is better suited to determining how marital/community property should be divided between them. Thus, for example, the Cook County Circuit Court is best suited to determining whether to offset Plaintiff's requested modification of the distribution of the Railroad Retirement Act benefits by some other modification to the marital property distribution. Further, as this case would reduce the ex-wife's share of marital/community property due her under Illinois domestic relations law, if the court does not abstain from exercising jurisdiction, the ex-wife will intervene or else be joined, and this court will be unable to avoid becoming enmeshed in Plaintiff's domestic relations dispute over the proper allocation of marital/community property. *See* Fed. R. Civ. P. 19(a) (providing that the court "must order" that a person be made a party if that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest"); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Accordingly, the undersigned recommends that the court abstain from exercising jurisdiction over the Complaint pursuant to the domestic relations exception.

4.    Review of the Railroad Board's Decision to Comply With the 2002 Order of the Circuit Court of Cook County, Illinois

Having concluded that the court should not exercise diversity jurisdiction and that the domestic relations exception applies, the undersigned now considers whether this court may exercise federal question jurisdiction. To the extent that Plaintiff is seeking this court's review of a final or nonfinal decision of Defendant as a question of federal or state law, the court lacks jurisdiction to do so. 45 U.S.C. § 355(g) ("Findings of fact and conclusions of law of the [Railroad Retirement] Board in the determination of any claim for benefits or refund … shall be, except as provided in subsection (f) of this section, binding and conclusive for all purposes and upon all persons … and shall not be subject to review in any manner other than that set forth in subsection (f) of this section."); 45 U.S.C. § 355(f) ("Any claimant … aggrieved by a final decision under subsection (c) of this section, may, only after all administrative remedies within the Board will have been availed of and exhausted, obtain a review of any final decision of the Board by filing a petition for review within ninety days after the mailing of notice of such decision to the claimant or other party … in the United States court of appeals for the circuit in which the claimant or other party resides …, or in the United States Court of Appeals for the Seventh Circuit or in the United States Court of Appeals for the District of Columbia."); *Johnson v. U.S. R.R. Ret. Bd.*, 925 F.2d 1374, 1376 (11th Cir. 1991) ("This court has jurisdiction to review [Railroad Retirement] Board decisions." (citing 45 U.S.C. §§ 231g, 351(r), 355(f)), 362)); *Powell*,

2022 WL 2496198, at *3 ("Congress … did not vest the district courts with jurisdiction over [Railroad Retirement] Board appeals." (citing *Denberg v. U.S. R.R. Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983))).

Therefore, the court recommends that any challenge to Defendant's decision to comply with the 2002 Cook County order be dismissed for lack of subject matter jurisdiction. *Powell*, 2022 WL 2496198, at *3 ("Without subject matter jurisdiction, this court must dismiss Powell's claims.").

5.     Opportunity to Amend

Further, the court recommends that Plaintiff not be offered an opportunity to amend before dismissal in an attempt to rectify the jurisdictional defects identified above. A district court need not allow an amendment when amendment would be futile. *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("While a *pro se* litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile."); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Because jurisdiction is lacking, no amendment could save the case from dismissal, and amendment would be futile. *Reid*, 2021 WL 972114 at * 2 ("Because subject matter jurisdiction would be lacking here, amendment would be futile in this case.").

"Despite this Recommendation, if [Plaintiff] wishes to address the deficiencies in his Complaint, he is not without recourse." *Lietzke v. City of Birmingham*, No. 2:21-CV-206-WKW-JTA, 2023 WL 3237500, at *6 (M.D. Ala. May 3, 2023). "Plaintiff will be permitted to file objections to the findings set forth in this Recommendation, and thus he

is afforded the requisite opportunity to be heard about the deficiencies of his [C]omplaint prior to any dismissal of the [C]omplaint." *Larkins v. Montgomery Cnty. Cir. Ct.*, No. 2:19-CV-281-MHT-WC, 2020 WL 2744116, at *6 n.3 (M.D. Ala. Apr. 21, 2020), *report and recommendation adopted*, No. 2:19CV281-MHT, 2020 WL 2739821 (M.D. Ala. May 26, 2020).

B.     Plaintiff's Motion for Judgment

Plaintiff moves for judgment in his favor (Doc. No. 18) on grounds that Defendant did not timely file its reply brief in compliance with the Court's March 14, 2023 briefing order (Doc. No. 11.) Entering judgment on the merits in Plaintiff's favor because Defendant misread the court's briefing order would be wrong for two reasons.

First, as explained above, the court does not have subject matter jurisdiction (or, alternatively, should refrain from exercising it), so any judgment for Plaintiff on the merits, even one entered as a sanction, would be a nullity. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868))); *Howard v. Price*, No. 122CV00408SDGJSA, 2022 WL 2389322, at *2 (N.D. Ga. Apr. 7, 2022 ) ("[A]ny ruling made by a federal court that lacks subject matter jurisdiction is a nullity and either party, even the party that invoked the jurisdiction of the court, can attack jurisdiction at any time even after judgment is rendered."), *report and recommendation adopted*, No. 1:22-CV-00408-SDG, 2022 WL 2389142 (N.D. Ga. May 23, 2022).

Second, entering judgment against a party for failure to comply with a court order is an extreme sanction to be imposed as a consequence only for serious violations where less extreme measures are inadequate. As the court explained in its April 24, 2023 Order (Doc. No. 19), Defendant demonstrated that its failure to timely file a reply brief was excusable neglect and has assured the court that the problem will not recur. The problem has been remedied without resort to sanctions and Defendant has scrupulously complied with court orders since, without incident. Any sanction, especially a nuclear option in the form of an adverse judgment, would be unwarranted overkill. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (holding that a district court did not err in declining to enter default against the defendants for failure to comply with court orders because "[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations" and "exceptional circumstances" that were not present in the case, because any delay in complying with court orders did not prejudice the plaintiff, because of "[t]he strong preference that cases be heard on the merits," and because the plaintiff's "claims against most of the defendants were facially invalid" anyway); *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976) (holding that, where a sanction would "amount[] to judgment against the defendant without an opportunity to be heard on the merits," "an appellate court's review should be particularly scrupulous lest the district court too lightly resort to this extreme sanction," which would be permissible only "when a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities").

25

Accordingly, Plaintiff's Motion for Judgment (Doc. No. 18) is due to be denied.

C.    Plaintiff's Motion to Amend (Doc. No. 24)

In his Motion to Amend (Doc. No. 24), Plaintiff seeks to add new claims against Defendant for breach of contract and fraudulent misrepresentation. He alleges that Defendant breached its contract with him when it failed to follow its own handbook and instead distributed a portion of his Railroad Retirement Act benefits to his ex-wife. (Doc. No. 24 at 1.) He also alleges that Defendant made a fraudulent representation to him when it stated that it needed a new court order to "restore" his Railroad Retirement Act benefits, because Defendant is now not cooperating with his attempt to obtain a new court order (presumably via this action). (*Id*.)

For the reasons stated in Sections IV.A.4 of this Recommendation and as explained by Judge Borden in *Powell*, 2022 WL 2496198, this court does not have jurisdiction to review Defendant's decisions regarding distribution of Railroad Retirement Act benefits. As explained in Section IV.A.5., an opportunity to amend is futile and unwarranted where the court lacks subject matter jurisdiction. Accordingly, Plaintiff's proposed amendment is due to be denied. *Powell*, 2022 WL 2496198 at **1, 3 (finding that an opportunity to amend was unwarranted because it would be futile where the court lacked jurisdiction over Plaintiff Powell's claims against Defendant Railroad Retirement Board for "negligent misrepresentation, age discrimination, and contempt of court"); *see also Bryant*, 252 F.3d at 1163 ("A district court need not … allow an amendment … where amendment would be futile." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

## V. CONCLUSION

Accordingly, it is ORDERED that "Plaintiff's Answer to Defendant[']s Motion to Dismiss" (Doc. No. 24) is CONSTRUED as a Motion to Amend, and the Motion to Amend (Doc. No. 24) is DENIED.

Further, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that

1.      Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 9) be GRANTED.

2.      Plaintiff's Motion for Judgment (Doc. No. 18) be DENIED.

3.      This action be DISMISSED WITHOUT PREJUDICE.

It is further ORDERED that the parties shall file any objections to this Recommendation on or before **May 30, 2023**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning*

*Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661

F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 15th day of May, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE